**Ann TAYLOR, Ph.D, Plaintiff–Appellant,**

v.

**The UNION INSTITUTE, et al., Defendants–Appellees.**

Nos. 99–4443, 00–4026.

United States Court of Appeals, Sixth Circuit.

Feb. 19, 2002.

Before RYAN and BOGGS, Circuit Judges, and WILLIAMS, Senior District Judge.*

PER CURIAM.

Ann Taylor appeals the district court's summary judgment on all her claims arising from her discharge from employment by the Union Institute. Taylor is a black female. In her complaint, she alleged that her discharge constituted race and gender discrimination under both federal and Ohio state law, violated the Family and Medical Leave Act, and breached her employment contract with the Union Institute. For the reasons set forth below, we affirm the district court's summary judgment.

I

Taylor worked as a professor at the Gantz Center, which is the Cincinnati campus of the Union Institute ("Union"). Union is a self-described "center for alternative learning" at which "learners," or the students of Union, can develop their own plans for intellectual discovery under the direction of a facilitating professor. Union awards college degrees to "learners" who successfully complete an approved plan. In addition to the Cincinnati campus. Union operates facilities in several other cities.

In April 1996, Union administrators met with faculty of the Gantz Center to discuss an impending "financial crisis" caused by declining enrollment. To remain financially viable, the administrators claimed, the Gantz Center was required to maintain a student to faculty ratio of 25 to 1. This requirement was far from being met. The administrators informed the faculty that if enrollment did not increase, Union would need to lay off faculty. The administrators further informed the faculty that the final decision on whether faculty would be laid off would be made on July 1, 1996.

Enrollment did not increase to the satisfaction of Union's administration, and, on May 28, 1996, Robert T. Conley, the president of Union, informed the faculty in Cincinnati that the campus was "in a layoff condition." The notification was in accordance with the faculty manual, which required such notice thirty days prior to any layoff.

On June 1, 1996, Taylor broke her leg in an automobile accident, and began a requested medical leave. In a letter dated July 1, 1996, Conley informed Taylor that the "layoff condition" was being "implemented" and that she would be laid off, effective on the later of July 31, 1996 or her return from medical leave.

Taylor, after filing and pursuing a grievance with the Equal Employment Opportunity Commission, brought this action against Union and several individual members of its administration. Taylor claimed that the discharge was motivated by racial-

---

* Honorable Glen M. Williams, United States District Judge for the Western District of Virginia, sitting by designation.

ly and sexually discriminatory intent, in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981, and Ohio Rev.Code § 4112.99. She also claimed that Union violated the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*, by not restoring her to her previous position upon her return from a protected leave and by discriminating against her because of taking leave. Finally, Taylor alleged that Union had breached its employment contract with her by not following provisions concerning layoffs in its personnel manual.

Discovery was conducted, and Union moved for summary judgment. The district court granted Union's motion for summary judgment in full. The district court held that there was no genuine issue of material fact that Union's proffered reason for Taylor's discharge was not pretextual, that Taylor would have been laid off even if she had not taken protected medical leave, and that Union did not breach its contractual obligations to Taylor by discharging her. The court entered its order dismissing Taylor's action on November 9, 1999. In case number 99–4443, Taylor appeals the district court's award of summary judgment to Union.

On February 11, 2000, this court issued an order holding in abeyance case number 99–4443 for thirty days while Taylor sought post-judgment relief with the district court. On February 16, 2000, Taylor filed a Motion for Relief from Judgment, pursuant to Fed.R.Civ.P. 60(b), alleging that Union had intentionally withheld a document requested in discovery. The district court, however, denied Taylor's motion on August 15, 2000, holding that the withheld document was not within the scope of Taylor's request for production. In case number 00–4036, Taylor appeals the district court's denial of her Motion for Relief from Judgment. We consolidated Taylor's two appeals and now consider them together.

## II

Taylor argues that she had demonstrated a genuine issue of material fact with regard to her (1) race and gender discrimination claims, (2) Family and Medical Leave Act claims, and (3) breach of contract claims, and that district court therefore erred by granting Union summary judgment. We discuss each of these categories of claims separately below. Taylor also urges us to reverse the district court's denial of her Motion for Relief from Judgment, which we address in our discussion of her race and gender discrimination claims.

### A. Taylor's Race and Gender Discrimination Claims

■ Taylor argues that the district court erred in granting summary judgment on her race and gender discrimination claims. Taylor sued for racial and sexual discrimination under both federal and Ohio law. *See* 42 U.S.C. § 1981a; Title VII, 42 U.S.C. § 2000e; Ohio Rev.Code Ann. § 4112.99.

■ All of these causes of action rely on the same burden-shifting standard established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The district court held that Taylor established a prima facie case for her race and gender discrimination claims. Thus, as to each claim, the district court must have held that Taylor was a member of the protected class, suffered an adverse employment action, was qualified for the position, and was treated less favorably than a non-protected employee. *See id.* at 802 (1973); *Williams v. Williams Electronics, Inc.*, 856 F.2d 920, 922–23 (7th Cir.1988) (modifying the *McDonnell Douglas* framework for reduc-

tion-in-force cases). Union does not argue that the district court erred in this regard.

■ Once a plaintiff in a discrimination suit establishes her prima facie case, the burden of production shifts to the defendant to offer a non-discriminatory reason for the adverse employment action. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). We have previously stressed that the defendant bears only the burden of production, not the burden of persuasion, in that the defendant must merely "articulate a valid rationale" for the adverse employment action. *Hartsel v. Keys,* 87 F.3d 795, 800 (6th Cir.1996). The district court held that Union had met its burden of production. Taylor appears to concede that Union met its burden of production except as to one of its proffered reasons. Although we note that Union need state only one non-discriminatory reason to meet its burden of production, we pause for a moment to consider Taylor's argument.

■ Union claims that one reason why Taylor was discharged was because of a financial crisis at Union. Taylor argues that the financial crisis explanation is not a legally sufficient non-discriminatory reason for her adverse employment action. Standing alone, the financial crisis explanation would not satisfy Union's burden of production. The financial crisis rationale explains why an adverse employment action occurred, not why it occurred to Taylor. In other words, Union's financial crisis explains why this is a "reduction-in-force" case. We still require a reason why Taylor was chosen as the object of the reduction in force. *Tye v. Board of Educ. of the Polaris Joint Vocational Sch. Dist.,* 811 F.2d 315, 319 (6th Cir.1987). As the Supreme Court framed the issue, the defendant in a reduction-in-force case must offer a non-discriminatory reason "why

someone else was preferred." *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

This is, of course, not the only non-discriminatory reason that Union cited for its decision to lay off Taylor. Taylor does not appear to dispute that Union's other proffered reasons met its burden of production. We will discuss those reasons below.

■ If the defendant meets its burden of production, then the plaintiff resumes her burden of persuasion. The plaintiff must show, by a preponderance of the evidence, that the defendant's proffered reason was not the actual reason for the defendant's adverse employment action. *See Burdine,* 450 U.S at 256; *McDonnell Douglas,* 411 U.S. at 804–05. In other words, the plaintiff must show that the defendant's proffered reason was a mere "pretext for intentional discrimination." A showing of pretext permits the plaintiff to prove intentional discrimination indirectly—although the plaintiff may always present direct evidence of discriminatory intent. *See Burdine,* 450 U.S. at 256. We must stress, however, that prevailing in demonstrating that the defendant's proffered reasons are pretextual only permits, but does not compel, the court to find discriminatory intent, which is the plaintiff's ultimate burden of persuasion. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 510–11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (citing with approval *Galbraith v. Northern Telecom, Inc.,* 944 F.2d 275, 282–83 (6th Cir.1991)).

Before we discuss whether Taylor created a genuine issue of material fact with regard to whether Union's proffered reasons for the discharge were pretextual, we address two preliminary matters. First, a racial and sexual discrimination suit is not an opportunity to question the business

judgment behind the criteria driving an employer's personnel decisions. *See McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th Cir.1990). Accordingly we consider Taylor's claims about what Union ought to have valued—her seniority, full-time status, advising load, and teaching responsibilities—only to the extent that they may make Union's proffered reasons seem less credible.

Second, Taylor makes one pervasive error throughout her argument. She often frames her evaluations of Union's proffered reasons in terms of Union failing to present evidence proving its proffered reasons. We emphasize again that Taylor bears the burden of persuasion in showing that Union's reasons have no basis in fact. The absence of evidence in the record only works against Taylor, not in her favor.

Union claimed that two criteria, announced before its final decision, determined who would be discharged in its reduction in force: "(1) the contribution which would be made by the faculty members to meet the continuing operation needs of the Gantz Center in the immediate future; and (2) performance in comparison with other employees of similar assignments." Allegedly of particular importance to Union was a faculty member's ability to recruit "learners," the students of Union. The financial crisis that had motivated the reduction in force was due to the declining student-to-faculty ratio at Union, creating greater operating losses. Because of the financial problems of Union, it valued recruiting above other criteria.

According to Union, Taylor ranked last among all the faculty at the Gantz Center in this category. We neither have found nor have been directed to any evidence in the record to contradict this claim. Taylor claims that individual deponents employed by the defendant could not produce data showing that other employees had recruited more "learners." Neither Union nor its employees, however, need produce data backing up its reason as the defendant does not bear the burden of persuasion. As it turns out, Union appears to have produced some data on the numbers of learners recruited that appear to confirm Union's claim. JA at 636. We hold that Taylor has not presented sufficient evidence to create a genuine issue of material fact regarding the factual accuracy of her comparatively poor recruiting performance or an alternative actual motivation behind the discharge. Taylor's additional claims about her comparative merits on other qualities are not relevant, as Union has not offered her performance in those areas as reasons for her dismissal.

Taylor also argues, apparently in the alternative, that her comparatively deficient performance in recruiting "was the fault of the Union Institute." Taylor asks us to examine *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). In *Reeves*, the employer had said that one reason for the employee's discharge was his poor supervision of lower employees' attendance and their corresponding absenteeism. The Court, however, expressed skepticism regarding this proffered reason because the structure of the business clearly indicated that the discharged employee was not responsible for citing or disciplining individuals for non-attendance. *See id.* at 2107. For the Court. a proffered criticism was likely pretextual when it reflected on a task that simply was not the employee's responsibility. *See ibid.*

Taylor, in comparison, does not argue that the recruitment of "learners" was not her responsibility. Rather, she urges the court to engage in some *ex post* review of why her recruiting, admittedly a responsibility of her position, was comparatively

weak. We decline her invitation. We will not engage in a searching review of the way in which Union conducts its business, or how it could have restructured operations to enhance Taylor's recruiting potential. *Reeves*, which found reasons criticizing tasks that were simply outside an employee's portfolio to be potentially pretextual, is inapposite here.

Taylor next argues that the district court applied an improper legal standard. According to Taylor, the district court required her to show "pretext plus," or a refutation of the defendant's proffered reason plus affirmative evidence of discriminatory intent. Taylor cites a passage in the district court's opinion discussing her attempt to shift the blame to Union for her relatively lackluster recruiting. The district court noted: "Even if this Court were to accept as true Plaintiff's allegations that [the Gantz Center's director] steered prospective recruits away from her and that other faculty members infringed upon her recruiting efforts, the Court finds that Defendants, nevertheless, reasonably relied upon the facts before them in assessing her performance as compared to others. Moreover, Plaintiff has presented no evidence to suggest that these alleged problems with the recruiting system were somehow related to her race or sex."

We can find nothing wrong with the district court's discussion here. Taylor is correct that showing pretext alone legally permits, but does not compel, a finding of discriminatory intent. *See Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 351 (6th Cir.1997). Raising a genuine issue of material fact regarding whether all the defendant's proffered reasons are pretextual is likely enough to avoid summary judgment. Even if we were to view this passage in isolation, we would not find that the district court required any more than that. The district court found that there was no

genuine issue of material fact with regard to whether Union relied on her comparatively lackluster recruiting in discharging her as opposed to others. The court then addressed Taylor's explanations for her lackluster recruiting. Those did not touch on whether Union relied on her actual recruiting performance. Their only relevance was to show direct evidence of discriminatory intent. The district court properly held that there was no evidence of discriminatory intent in the structure that allegedly caused Taylor's poor recruiting performance. The court did not impose a "pretext plus" standard.

Finally, Taylor argues that the district court erred by ignoring evidence of a discriminatory atmosphere at Union. According to Taylor, "a plaintiff may establish pretext by showing an atmosphere of discrimination in the workplace." As an initial matter, we should note that evidence of a discriminatory atmosphere in the workplace would most likely be probative of discriminatory intent, not circumstantial evidence of pretext.

The evidence that Taylor presents of a discriminatory atmosphere is not of the magnitude that we have found adequate to avoid summary judgment. We have cautiously in the past permitted some discriminatory statements by managers to raise a genuine issue of material fact with regard to discriminatory intent. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 356–57 (6th Cir.1998). Neither Taylor nor any of her witnesses point to any even ambiguously discriminatory comment made by anybody at Union. Instead, she urges us to infer a genuine issue of material fact from witness statements regarding their perception of the "attitude" with which other individuals at Union greeted minorities. At least in this case, generalized allegations about the comparative warmth with which a few individuals treat

non-minorities are not sufficient to raise a genuine issue of material fact regarding Union's discriminatory intent.

We remain unpersuaded by Taylor's arguments that the district court erred in its race and gender discrimination analysis and therefore affirm the district court's summary judgment dismissing those claims.

## B. Taylor's Fed.R.Civ.P. 60(b) Motion

■ We discuss the district court's denial of Taylor's Fed.R.Civ.P. 60(b) motion at this point, as its substance touches on her discrimination claims. Taylor argues that the district court erred in not granting her motion, pursuant to Fed R. Civ P. 60(b), to have the summary judgment set aside for Union's "misconduct" in responding to discovery. In her motion, Taylor alleged that Union intentionally withheld a document requested in discovery. As we have held, "the failure to disclose or produce material requested in discovery *can* constitute misconduct within the purview of 60(b)(3)." *See Abrahamsen v. Trans–State Express, Inc.,* 92 F.3d 425, 428 (6th Cir.1996) (emphasis added).

At the heart of Taylor's motion is a request for production of documents that Taylor had propounded during discovery. The request was as follows: "For the last ten (10) years, please provide all documents, including but not limited to, studies, reports, statistics, memoranda, correspondence, notes, investigations, complaints, charges, allegations, EEOC charges, OCRC charges, correspondence, memoranda (*sic* on the repetition), and/or notes related to affirmative action, gender or race discrimination, gender or race harassment, disability discrimination, and/or retaliation at The Union Institute." The request was propounded on December 16, 1997 and the defendant timely responded on September 28, 1998.

Sometime between January 5 and February 14, 2000, after the district court had entered summary judgment in this case, another former employee of Union forwarded to Taylor a memorandum that he had discovered in his litigation against Union. The memorandum reported the conclusions of a one-man study undertaken by a Union employee, Stephen Dobbins, at the request of its president regarding racial discrimination at Union. The memorandum was addressed to the president and was dated December 21, 1998, nearly three months after Union's response to Taylor's request for production of documents.

■ Union clearly was not under an obligation to produce a document that did not yet exist when it responded to Taylor's request for production in September 1998. The default rule is, however, that a party has a duty to supplement her discovery response if she learns that her response "is in some material respect incomplete or incorrect." Fed.R.Civ.P. 26(e)(2). The question is, therefore, whether Union's response to Taylor's Request for Production was "in some material respect incomplete" once the Dobbins memorandum was generated such that Union's duty to supplement was triggered.

The district court held that Union was not so obligated to disclose the Dobbins memorandum. According to the court, the request did not call for the memorandum as it requested only those documents regarding racial discrimination "for the last ten (10) years." The request for production referred to documents in a finite period of time, the ten years prior to Taylor's request, or at least prior to Union's response. The document in question was created well after both the request and response.

We find the district court's opinion here well reasoned. It is true that the discovery request did not speak with exquisite clarity regarding its latest temporal limits. But, we find that the request, on its own terms, was looking for documents created over a ten-year period, which on no interpretation of the request includes December 21, 1998. The fact that there is reasonable argument to be made on the temporal limits of Taylor's discovery request demonstrates that Union's failure to supplement was not the type of intentional misconduct envisioned by Rule 60(b). If Taylor wants the benefits of a self-executing duty to supplement, she ought not disable it with temporally limiting language in her request. Although it appears that Taylor had argued below that the failure to produce the document was violative of some other specific requests for production, she does not raise those arguments before us. The district court's denial of Taylor's Rule 60(b) motion is affirmed.

## C. Taylor's Family and Medical Leave Act Claims

■ Taylor also argues that her discharge violated the Family and Medical Leave Act. 29 U.S.C. § 2601 *et seq.* On June 1, 1996. Taylor broke her leg and was forced to take medical leave. During her medical leave. Union made its reduction-in-force decision and decided to lay off Taylor. None of the parties disputes that Taylor was entitled to take medical leave under the Act. Taylor argues, however, that the failure of Union to restore her to her previous position upon her return constituted a violation of the Act. She also contends that she was discriminated against, in violation of the Act, because of having taken the medical leave.

■ The Act creates "prescriptive and proscriptive employee rights." *See Hod-*

*gens v. General Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir.1998) (noting the distinction). The prescriptive rights created by the Act provide "entitlements" to employees and "set floors for employer conduct." *Ibid.* To prevail on the basis of the Act's prescriptive rights, the plaintiff need not show that she was treated worse than other employees, just that she was denied the Act's entitlements. Proscriptive rights, on the other hand, prohibit disparate employer conduct with regard to employees taking leave. *See ibid.*

Taylor claims that her prescriptive rights were violated. Given that neither party disputes that Taylor's injury and actions triggered the coverage of the Act. Taylor must demonstrate either that she was denied the required leave, *see* 29 U.S.C. § 2612(a), or that she was not restored to the same or equivalent position of employment that she held when the leave commenced. *See* 29 U.S.C. § 2614(a). Certainly, Taylor was not restored to her old position, or any position, at Union. But, the FMLA does not absolutely protect an employee on leave from intervening discharge for other reasons. As the Act makes clear, nothing in the Act "shall be construed to entitle any restored employee to any right, benefit or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken leave." 29 U.S.C. § 2614(a)(3).

Although one reading of the text of this limitation might apply it only to restored employees, of which Taylor is certainly not one, the unchallenged and authoritative regulations of the Department of Labor make clear that the FMLA does not protect an employee on leave from an adverse employment decision that would have otherwise occurred had she not taken leave. *See* 29 C.F.R. 825.312(d). In essence, the FMLA does not give the employee on

protected leave a bumping right over employees not on leave.

■ It is important to note that the same Department of Labor regulations interpreting the FMLA also place the "burden of proof" on the defendant-employer to show that an employee on protected leave would have been laid off even if she had not taken leave, 29 C.F.R. § 825.216(a)(1). Again, none of the parties even mentions, much less questions the validity of, this regulation. This, of course, is a shift in the burden of persuasion from the sexual and racial discrimination claims.

The district court found that Taylor had not presented evidence that the evaluation period during which she was on leave was considered in the layoff decision. Placing aside the unargued position that the court's analysis may have been a misallocation of the burden of persuasion, there is some evidence in the record that Union did consider performance for time periods during which Taylor was on leave. According to Taylor, Union had "set aside" thirty days during the month of June for employees to "make an extra effort to get enrollment up." For support of this claim, Taylor cites Union's response to her EEOC complaint, which read: "The faculty and staff were also notified that no final decision would be made until July 1 which provided all parties involved with an opportunity to bring the enrollment up to the match the existing staffing. Based on actual enrollment data as of the end of June, we would determine our actual staffing needs." From reading the document, however, this notification appeared to have occurred at a staff meeting on April 25, 1986, more than a month before Taylor went on leave. Moreover, by the terms of the allegedly damning admission, Union seemed to say that recruiting activity during that period would affect its decision as to whether employees would be laid off rather than as to who would be laid off.

Like the district court, we note that Taylor's lack of recruiting performance during her thirty days of leave was unlikely to have affected Union's decision to lay her off. Union claims that its decision was based on her historically and consistently below average recruiting performance. Taylor presents no evidence that any increased effort she could have made during one half of the sixty-day period would have affected Union's decision to lay off Taylor as opposed to another employee.

■ The FMLA simply does not provide absolute protection from layoff for protected employees. We hold that there is no genuine issue of material fact that Taylor would have been laid off even if she had not taken leave.

Taylor also raises her proscriptive rights under the FMLA. The Act does prohibit an employer from discriminating against an employee for taking leave. At least one circuit court of appeals has held that a discrimination claim under the FMLA is subject to the same burden shifting analysis as gender and race discrimination claims. *See Hodgens,* 144 F.3d at 159.

Assuming, *arguendo,* that Taylor demonstrated her prima facie case. Union's articulated non-discriminatory rationale for the adverse employment decision is her consistent failure to recruit as well as the other employees. In most cases, the disposition of prescriptive rights will resolve an accompanying FMLA discrimination question, and that generality holds here. Our holding that there is no genuine issue of material fact with regard to whether Taylor would have been discharged even if she had not taken leave includes a determination that Union's articulation of its non-discriminatory rationale is not pretextual. We therefore affirm the district

court's summary judgment in favor of Union on Taylor's FMLA claims.

## D. Taylor's Breach of Contract Claims

██ Taylor argues that Union breached its contract with her by violating provisions of Union's Personnel Policies Manual ("the Manual") pertaining to layoffs. Union concedes that the Manual is incorporated in the terms of Taylor's contract and therefore we need not reach in this case the often tricky state law question regarding the extent to which provisions of an employee manual constitute contractual obligations.

Two provisions of the Manual are at the heart of the contractual dispute in this case. First, the Manual provides that "layoffs occur only when they are deemed necessary and when other available remedies prove inadequate." Manual § B–26(A) Taylor argues that Union violated this provision because the layoff *was* not necessary and other remedies *were* adequate. However, the contract does not require that a layoff be objectively necessary or that other remedies be actually inadequate. Instead, the Manual requires at most that Union *"deem"* the layoff necessary. The evidence demonstrates that Union exercised its business judgment and found layoffs a necessary alternative. We hold that Union's determination is all that the contract requires in this regard and that Taylor's arguments about what could have been done to avoid the layoff are irrelevant.

██ Second, the Manual specifies some criteria for determining whom to lay off. The Manual provides in relevant part: "Layoff decisions are made after due consideration is given to individual length of service, performance during the individual's length of service, performance in comparison with other employees with similar assignments, and the possibility of future service to Union Institute." Manual § B–26(A)(4), JA at 625. The Manual does not specify the weight that must be given to each of these factors. It is clear, from Union's own statements, that it did consider some of these factors, such as Taylor's comparative performance. On appeal, Taylor drops her other arguments on this provision and only argues that Union did not consider her seniority in making the layoff decision.

Amazingly, Union may have found a way to violate this otherwise empty contractual language. In a letter to the faculty dated April 23, 1996, Union indicated that: "Layoff decisions will not be based on seniority." The statement indicates that they did not consider seniority at all. It could have said that "layoff decisions will not be *completely* based on seniority." Then, Union would just have been echoing the contract.

This is the most spare of contractual provisions. Although Union may have technically violated the clause by not considering seniority, there is no evidence that the breach proximately caused Taylor's damages, namely her layoff. Consistent with the contract, Union could have assigned Taylor's seniority nearly no weight, and undoubtedly such consideration would not have changed Union's decision. Although the district court did not parse this dilemma in terms of proximate cause, its summary judgment for the defendant on this contractual claim was correct and is affirmed.

## III

Because Taylor failed to raise a genuine issue of material fact with regard to her race and gender discrimination causes of action, her FMLA claims, or her breach of contract claims, we AFFIRM the district

court's summary judgment in favor of the defendants.