NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0506n.06

No. 10-4396

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*May 16, 2012*

LEONARD GREEN, Clerk

DALE KRUMHEUER,

     Plaintiff-Appellant,

v.

GAB ROBINS NORTH AMERICA, INC.,

     Defendant-Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

_____/

BEFORE:    CLAY and GIBBONS, Circuit Judges; KORMAN, District Judge.[*]

**CLAY, Circuit Judge**. Plaintiff Dale Krumheuer appeals an order of the district court granting summary judgment to Defendant GAB Robins North America, Inc. ("GAB Robins") on his claim under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. Plaintiff alleged that he was discharged by Defendant in retaliation for exercising his rights under the FMLA. For the reasons set forth below, we **AFFIRM** the district court's order.

**BACKGROUND**

Defendant is an insurance appraisal provider that provides loss adjusting and claims administration services to insurance carriers and self-insured entities. Plaintiff was formerly

_____

[*]The Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

employed as a claims adjuster at the Cleveland, Ohio office of GAB Robins from the Fall of 2002 until his discharge in February 2007. Beginning in July 2006, Plaintiff's work performance declined and Plaintiff's supervisors, Gary Gottschalk ("Gottschalk") and Lynn Kral ("Kral"), documented several issues with Plaintiff's performance, including his failure to respond to telephone and email messages regarding payment requests and his failure to adhere to the company's attendance policy. On October 9, 2006, Kral issued Plaintiff a written warning that stated the following:

> This memo is to inform you that as of today, you have overdue diary from June 31, 2006 through October 9, 2006. You have been notified three prior times of the overdue diary, especially from July, and you have assured me that it would be done. To date, this has not been completed.
> . . . .
> There are many times when you just do not show up to work, and we have no idea where you are until you either call in later that day or just show up.

(R.13–2: Krumheuer Dep. 85–86.) In addition, the memo indicated that Plaintiff failed to update and regularly submit expense reports to his supervisors and the memo stated that Plaintiff's expense reports from August and September remained outstanding. Kral ended the memo by stating that "failure to comply with the above may result in additional disciplinary action, which may include termination of employment." (*Id*. 87.)

Plaintiff stated in his deposition that on Saturday, October 7, 2006, he began to experience symptoms of a heart attack. On October 9, 2006, Plaintiff called GAB Robins and spoke with one of the company's clerks. Plaintiff advised the clerk that he was going to the hospital and requested a medical leave of absence until December 1, 2006, which was the date his short-term disability insurance expired. Defendant granted Plaintiff's request. Plaintiff was later diagnosed with coronary heart disease. Plaintiff stated that this was the first time he requested medical leave from Defendant. Plaintiff acknowledged that prior to his absence, he was aware of his work performance issues.

2

On December 1, 2006, Plaintiff was cleared by his family physician to return to work and he returned on that day. However, on December 12, 2006, a different physician recommended that Plaintiff limit his work hours to half days until December 25, 2006. Based on his physician's recommendation, Plaintiff filed a second medical request with Defendant, which was granted.

On December 13, 2006, Plaintiff met with Kral to discuss his work performance issues, including, his workload, general feeling about his work responsibilities, and also his medical condition. After the discussion, Plaintiff and Kral agreed that Plaintiff's workload would be reduced. Later that evening, Kral sent an email to Plaintiff, which summarized their earlier conversation. Kral stated that Plaintiff would still be held accountable for performing at an acceptable level despite his reduced workload. The email also mentioned that one of Plaintiff's current claims would be reassigned to a different employee due to his prior issues of failing to timely respond to clients and co-workers. In addition, the email restated the company's procedures for filing claims, completing expense reports, as well as the company's attendance and absence policy. Kral ended her email by advising Plaintiff that his failure to adhere to the company's policies and procedures "may result in further disciplinary action up to and including termination."

Plaintiff met with Kral on January 16, 2007, to request additional time off in order to receive medical treatment for his heart condition. Kral stated that she would "need to know what dates you are going to be off and will need additional medical documentation to back any further time off work until further notice." On January 17, 2007, Plaintiff submitted a copy of a doctor's note to Kral to supplement his request.

On January 18, 2007, Kral issued a second written warning memo to Plaintiff regarding his frequent absences. The memo acknowledged that Plaintiff had made significant improvements in a

3

number of areas outlined in the email sent on December 13, 2006, but the memo also indicated that Plaintiff failed to comply with the attendance policy. The memo stated that Plaintiff was being placed on "written warning as a result of extensive absenteeism and failure to provide proper absence notification." The memo further documented that Plaintiff had missed fifteen days or partial days from December 1, 2006 to January 18, 2007 without proper notification. The memo ended with the following statement:

> It is to your advantage and to the Company's advantage that you sustain acceptable performance. Failure to meet and to sustain the expected performance may result in termination of your employment with the Company. The Company reserves the right to accelerate this action process, up to and including termination in the event that there is deterioration in your performance or attendance. Please be reminded that notwithstanding this Corrective Action memorandum, your employment with the Company remains "at-will," meaning either you or the Company may terminate the employment relationship at any time for any reason, with or without notice.

(R.13-7: Def. Mot. for Summ. J. Ex. G.) Plaintiff offered no explanation at his deposition for his frequent absences and conceded that he did not provide any further documentation of his need for time off from December 26, 2006 to January 18, 2007. Plaintiff explained in the employee comment section of his written warning memorandum that his current medical condition was the sole reason for his excessive absences.

On January 24, 2007, Plaintiff verbally notified Kral that he needed additional heart surgery that was scheduled for February 13, 2007. Kral requested that Plaintiff submit the appropriate documentation for her review. Plaintiff then submitted a note from his cardiologist to notify Kral of the procedure on February 7, 2007. That same day, Plaintiff changed his time-off request because the cardiologist needed to reschedule the procedure. In accordance with the company's absence policy, Plaintiff submitted a new request to Kral. Plaintiff recalled that Kral stated that she was

4

"tired of me going to the doctor" and that Gary Gottschalk, a former supervisor at GAB Robins was a witness to the conversation. Shortly after Plaintiff submitted his request, Plaintiff met with Kral and was informed that he was being laid off because "there was a reduction of staff at GAB."

Plaintiff filed this action in the Cuyahoga County Court of Common Pleas asserting seven claims against his former employer, GAB Robins: (1) disability discrimination in violation of the Ohio Revised Code (ORC) § 4112.99; (2) age discrimination in violation of ORC § 4112.14(B); (3) interference with rights under the FMLA, 29 U.S.C. § 2601 *et seq*.; (4) retaliation for exercising FMLA rights; (5) breach of implied contract; (6) intentional infliction of emotional distress; and (7) promissory estoppel.

Defendant removed the case to the United States District Court for the Northern District of Ohio pursuant to 28 U.S.C. § 1441. On January 15, 2010, Defendant filed a motion for summary judgment. Plaintiff opposed Defendant's motion and Defendant filed a reply in support of its summary judgment motion.

Defendant also filed a motion to strike portions of Plaintiff's affidavit on the basis that the affidavit contained conclusory statements, subjective beliefs, and other statements, which contradicted Plaintiff's deposition testimony. The district court issued its memorandum and opinion on September 27, 2010 granting Defendant's summary judgment motion. The district court also granted in part Defendant's motion to strike Plaintiff's affidavit. Plaintiff timely filed his notice of appeal, on October 27, 2010. We dismissed for want of prosecution, but later reinstated Plaintiff's appeal, in which he challenges the grant of summary judgment on his FMLA claims.

## DISCUSSION

### I.      Standard of Review

We review a district court's grant of summary judgment *de novo*. *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a) (2011). Evidence in the record is viewed in the light most favorable to the nonmoving party, and all reasonable inferences are drawn to the benefit of that party. *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 576–77 (6th Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). Summary judgment is appropriate only where the evidence raises no genuine issues of material fact "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### II.     Analysis

#### A.      The FMLA

The FMLA protects employees who have worked for the same employer for at least one full year and who have provided at least 1,250 hours of service within that time period. *See* 29 U.S.C. § 2611(2)(A). Eligible employees are entitled to up to twelve weeks of leave per year if the employee has a "serious health condition that makes the employee unable to perform the functions of the position of such employee." *Id.* § 2612(a)(1)(D). An eligible employee who takes leave pursuant to the FMLA "shall be entitled, on return from such leave, to be restored by the employer to the position of employment held by the employee when the leave commenced," *id.* §

2614(a)(1)(A), or "to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." *Id.* § 2614(a)(1)(B).

We "recognize two distinct theories for recovery under the FMLA: (1) the 'entitlement' or 'interference' theory arising from 29 U.S.C. § 2615(a)(1); and (2) the 'retaliation' or 'discrimination' theory arising from 29 U.S.C. § 2615(a)(2)." *Hoge v. Honda of America Mfg., Inc.* 384 F.3d 238, 244 (6th Cir. 2004).

In this case, Plaintiff's claim falls under the retaliation/discrimination theory,[1] which prohibits an employer from discriminating or retaliating against an employee for taking FMLA leave. *See* 29 U.S.C. § 2615(a)(2). An employer is prohibited from "us[ing] the taking of FMLA leave as a negative factor in employment actions." 29 C.F.R. § 825.220(c); *Arban v. West Publ'g Corp.*, 345 F.3d 390, 403 (6th Cir. 2003). Employers who violate the FMLA are liable to the employee for damages. 29 U.S.C. § 2617(a)(1); *see, e.g.*, *Bryant v. Dollar Gen. Corp.*, 538 F.3d 394, 397 & n.1 (6th Cir. 2008) (noting that damages are awarded pursuant to 29 U.S.C. § 2617). In analyzing an FMLA discrimination claim, we employ the burden shifting analysis set forth in *McDonnell Douglas. See McDonnell Douglas v. Green*, 411 U.S. 792 (1973). Under the burden shifting analysis Plaintiff must establish that:

> (1) she was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action

---

[1]Plaintiff's brief also perfunctorily refers to his interference claim but he fails to develop an argument to support that claim. Even if Plaintiff intended to appeal that claim, he has waived it. Regardless, the claim is easily disposed of on reasoning similar to that outlined in connection with the retaliation claim.

adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Killian v. Yorozu Automotive Tenn, Inc.*, 454 F.3d 549, 556 (6th Cir. 2006) (citing *Arban*, 345 F.3d at 404). Plaintiff "bears the burden of demonstrating a causal connection . . . and must show that the employer's stated reason for [termination] was pretextual and that the true reason for [his] dismissal was [his] medical leave." *Id.* If the employee establishes a prima facie case of discrimination under the FMLA, then the burden shifts to the employer to offer a legitimate non-discriminatory reason for the termination. *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 508 (6th Cir. 2006). This appeal only involves the fourth prong of the analysis—whether Plaintiff has demonstrated a causal connection between the protected FMLA activity and his termination.

### B.    Plaintiff's Retaliation Claim

Plaintiff asserts that Defendant terminated his employment after he exercised his right to take FMLA leave to treat his heart condition. He argues that the district court erred in granting summary judgment to Defendant because (1) he provided sufficient notice of his intent to take FMLA leave and Defendant granted his request, and (2) there was a close temporal proximity between the time he provided notice to exercise his right under the FMLA and his discharge.

This Circuit has not adopted a uniform approach on whether a causal connection may be established solely on the basis of temporal proximity. On the one hand, we have concluded that temporal proximity alone is sufficient to establish a prima facie case of FMLA retaliation. *See DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004) (finding that Plaintiff was terminated by his employer twenty-one days after he engaged in a protected activity was "significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory

motive"); *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (same). But we have also stated that "temporal proximity is insufficient in and of itself to establish that the employer's non-discriminatory reason for discharging an employee was in fact pretextual." *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 317 (6th Cir. 2001). This Circuit has applied this rule to the general context of retaliation cases. *See Holzemer v. City of Memphis*, 621 F.3d 512, 526 (6th Cir. 2010) (stating that temporal proximity cases under a First Amendment retaliation claim requires the court to always look at the totality of the circumstances to determine whether an inference of retaliatory motive exists); *Parnell v. West*, No.95-2131, 1997 WL 271751, at *2 (6th Cir. 1997) (finding that under a Title VII discrimination claim, "temporal proximity alone will not support an inference of retaliatory discrimination where there is no other compelling evidence")).

In this case, Plaintiff notified Kral of his intent to take FMLA leave on January 24, 2007. Plaintiff was subsequently terminated on February 7, 2007, or approximately fourteen days after he notified Defendant of his medical leave. Although Plaintiff has established a close temporal proximity between his request for medical leave and his discharge, Defendant provided a legitimate, non-discriminatory reason for terminating Plaintiff's employment—namely that Plaintiff was released due to a nationwide staff reduction at GAB Robins and would have been released even if he had not taken medical leave. The FMLA does not "provide absolute protection from layoff for protected employees." *Taylor v. Union Institute*, 30 F. App'x 443, 453 (6th Cir. 2002) (per curiam). Moreover, Plaintiff never refuted Defendant's contention that his termination was based on economic reasons. In fact, Plaintiff admitted at his deposition that he was aware of the workforce reduction at GAB Robins, and he has no reason to dispute the fact that 84 employees were laid off

nationwide around the same time of his termination. In addition, Plaintiff was not the only employee discharged from his office as Defendant identified another claims adjuster, in a different division, that was also let go. There was also no indication from other employees that Plaintiff was released as a result of requesting medical leave. Plaintiff's former supervisor could not identify any other reason beyond economic reasons to explain Plaintiff's termination. Furthermore, Plaintiff has failed to identify any evidence of a retaliatory animus by Defendant.

Defendant also provided a second legitimate non-discriminatory reason for Plaintiff's termination—Plaintiff's performance issues. The record indicates that Plaintiff would have been terminated regardless of whether he exercised his FMLA rights. The evidence submitted on the summary judgment motion highlight a number of performance issues that arose prior to Plaintiff's medical condition and continued despite numerous warnings from his supervisor. In the October 9, 2006 memo, Kral issued a written warning to Plaintiff that advised him that his unexcused absences and his failure to follow the company's attendance policy were grounds for termination. Plaintiff never refuted the statements in Kral's memo.

> Q: Ms. Kral states that "there are many times when you just do not show up to work, and we have no idea where you are until you either call in later that day or just show up." Have I read that correctly?
>
> A: You have.
> . . .
>
> Q: Do you have any reason to believe that the dates identified by Ms. Kral were incorrect.
>
> A. No sir.

(R.13-2: Krumheuer Dep. 86–87.)

10

On December 13, 2006, Kral attempted to address Plaintiff's performance issues through an email, and also established new work guidelines and deadlines for submitting expense reports and work files. In addition, the email indicated that Plaintiff was required to provide advance notice of any absences or tardies. The email further stated that Plaintiff could be subject to disciplinary action, including termination, if he failed to comply with these requests. Plaintiff subsequently failed to comply. While Plaintiff did show some improvement in his handling of the files, there remained other performance issues and Defendant reasonably decided that it was appropriate to issue Plaintiff a written warning. After this disciplinary action, Plaintiff continued to miss a substantial number of days of work from December through January, in violation of the company's attendance policy and Kral's directive. Thus, Plaintiff's work performance provided an additional legitimate non-discriminatory reason to terminate his employment.

Plaintiff has failed to establish a causal connection between Plaintiff's medical leave request and his discharge. In addition, Defendant provided legitimate non-discriminatory reasons for Plaintiff's termination which Plaintiff is unable to rebut as being pretextual. Since Plaintiff cannot substantiate his FMLA retaliation claim, summary judgment in favor of Defendant was proper.

**CONCLUSION**

For the reasons discussed above, we **AFFIRM** the district court's order granting summary judgment to Defendant.