RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0317P (6th Cir.)
File Name: 04a0317p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

LORI HOGE,

    *Plaintiff-Appellee/*
*Cross-Appellant,*

*v.*

HONDA OF AMERICA MFG.,
INC.,

    *Defendant-Appellant/*
*Cross-Appellee.*

Nos. 03-3452/3477

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 00-00995—Edmund A. Sargus, Jr., District Judge.

Argued: June 16, 2004

Decided and Filed: September 16, 2004

Before: RYAN and COOK, Circuit Judges; CLELAND,
District Judge.[*]

_____

[*] The Honorable Robert H. Cleland, United States District Judge for
the Eastern District of Michigan, sitting by designation.

---

———————————

## COUNSEL

**ARGUED:** Mary Ellen Fairfield, VORYS, SATER,
SEYMOUR & PEASE, Columbus, Ohio, for Appellant.
Gary A. Reeve, REEVE & WATTS, Worthington, Ohio, for
Appellee. **ON BRIEF:** Mary Ellen Fairfield, VORYS,
SATER, SEYMOUR & PEASE, Columbus, Ohio, for
Appellant. Gary A. Reeve, REEVE & WATTS,
Worthington, Ohio, for Appellee. Joshua J. Morrow,
MARSHALL & MORROW, Columbus, Ohio, for Amicus
Curiae.

———————————

## OPINION

———————————

CLELAND, District Judge. This appeal concerns the
timing and nature of an employee's right to job restoration
under the Family Medical Leave Act ("FMLA"), 29 U.S.C.
§ 2614(a). On February 14, 2002, the United States District
Court for the Southern District of Ohio granted Plaintiff Lori
Hoge partial summary judgment on her claim for relief under
the FMLA. The district court determined that, after Plaintiff
appeared and attempted to return to work on June 27, 2000,
she was entitled to be restored to her former position or an
equivalent position with Defendant Honda of American
Manufacturing, Inc. ("Honda") by June 28, 2000 because she
was returning from authorized FMLA leave, ruling that
Honda violated the FMLA when it failed to return Plaintiff to
an equivalent position until July 31, 2000. The district court
subsequently awarded Plaintiff monetary damages, attorneys'
fees, and costs.

Defendant appeals, arguing that the FMLA required Honda
to reinstate Plaintiff to her employment position or an
equivalent position only within a reasonable time, not

immediately, and that there is no issue of fact that Honda did so in this case. Honda claims that Plaintiff's physical limitations, her unanticipated return, and the significant changes made by Honda to its production processes during a "model changeover" reasonably prevented Honda from restoring Plaintiff to work until July 31, 2000.

Plaintiff cross-appeals, challenging three of the district court's determinations. First, Plaintiff claims that the lower court erred in determining that Plaintiff was entitled to be reinstated under the FMLA, 29 U.S.C. § 2614(a), by June 28, 2000, arguing that Honda should have reinstated her immediately on June 27, 2000. Second, she challenges the district court's determination that she waived her FMLA right to full restoration by agreeing to a "Gradual Return to Work" program on July 31, 2000. Third, she appeals the district court's decision on her request for liquidated damages.

We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

In November 1995, Plaintiff Lori Hoge, a production associate at Honda's East Liberty Ohio plant, sustained a back injury in a non-work related car accident. She was hospitalized, took an extended leave of absence from her job, and returned to work in March 1996. Her injury, a fracture of a lumbar vertebrae, imposed several permanent physical restrictions on her work activities. Plaintiff's permanent work restrictions included: no jumping in or out of cars; no lower back extensions in excess of fifteen degrees; no lower back flexion in excess of thirty degrees; no pushing or pulling liner racks; no lifting of more than fifteen pounds; and a forty-hour workweek limitation. After her back injury, Hoge returned to work on the "door line," a position that accommodated her physical restrictions. She worked on the door line, taking intermittent FMLA leave for her back injury, until she took the approved FMLA leave leading to the instant dispute.

On April 20, 2000, Honda approved Hoge's request for continuous FMLA leave from May 11 until June 12, 2000 for abdominal surgery unrelated to her back injury. On or about June 12, 2000, Hoge telephoned Honda to request an extension of her FMLA leave, informing Defendant that she would need additional time to recover from her abdominal surgery. Although the parties agree that Honda approved two requested extensions of FMLA leave beyond Plaintiff's original June 12 expected return date, they dispute the date of her anticipated return.

The lower court concluded that "the undisputed evidence reveals . . . that Plaintiff failed to give any advance notice of her return so as to allow Defendant time to immediately locate an equivalent position." On the other hand, Plaintiff states that she never requested FMLA beyond June 26 and that Honda's documentation shows that her FMLA leave was twice extended and was scheduled to end on June 26, 2000. Examining the evidence in the record reveals the existence of an issue of fact on when Honda expected Plaintiff to return.

The evidence of Hoge's expected return date is equivocal. In a letter dated June 28, 2000, Honda approved a continuous FMLA leave extension "beginning on 6/12/00 and ending on 7/19/00." The letter stated that Honda "expected [Plaintiff] to return to work at the beginning of [her] shift on 7/20/00." However, in another letter dated June 30, signed by a different representative of Honda's Leave Coordination Department, Mark Lippencott, Honda approved continuous FMLA leave for Hoge from June 26, 2000 (the day before Plaintiff attempted to return to work) until July 12, 2000 with her expected return on July 13, 2000. Mr. Lippencott signed a third letter sent to Plaintiff, also dated June 30, 2000, which approved continuous "Medical leave" from July 13 until December 31, 2000. These documents reveal that Honda approved (although possibly ex post) Plaintiff's absence from work as FMLA leave for the period between June 12 and June 27, 2000 and also suggest that Honda did not expect Plaintiff to return to work on the morning of June 27. On the other

hand, Plaintiff's affidavit states that she did not request FMLA leave beyond June 26, 2000. Further, a leave of absence extension request, dated June 19, 2000 and approved by Honda on June 28, 2000, establishes June 26, 2000 as the return date for Hoge.

During Hoge's leave, Honda continued instituting a "new model changeover" that included multiple engineering and stylistic changes for the production of its year 2000 models. The model changeover directly affected Honda's assembly department where Hoge worked and was gradually implemented between February 8 and August 15, 2000.

After obtaining a release from her treating physician, Dr. Ronald Spier, Plaintiff appeared for work on June 27, 2000, expecting to return to her door line position. Upon her return, she presented to Honda's medical department a "Physician's Permit" which stated that she was able to return to her previous position on the door line. Plaintiff returned with the same physical restrictions associated with her back injury that she had before taking leave. She expected to be placed in a position which accommodated those restrictions. The medical department contacted Brett Strine, the person responsible for placing Hoge. Mr. Strine considered possible placements in light of the ongoing model changeover and staffing levels, but informed Plaintiff that no positions were available. Honda then conducted a placement review but did not find a suitable position for Plaintiff until July 26, 2000. Hoge eventually returned to a position on the engine line on July 31, 2000. Honda claims that the delay in finding an equivalent position was reasonable and was caused by several factors including Plaintiff's unexpected return and the time required to locate an equivalent position to accommodate Hoge's physical restrictions in light of the substantial changes made to its production processes.

Plaintiff's restoration to a position on the engine line was accomplished in accordance with a "Gradual Return to Work" ("GRTW") program. Under this program, Hoge worked less

than full time and her weekly hours increased over six weeks. Honda did not restore Plaintiff to a full-time work schedule of forty hours per week until September 18, 2000.

Plaintiff filed a two-count complaint against Honda, alleging violation of her FMLA rights and wrongful adverse employment action in violation of Ohio public policy. The parties voluntarily dismissed the state claim, leaving only the FMLA interference claim. The parties filed cross-motions for summary judgement and the district court granted Plaintiff's motion in part and denied Defendant's motion. The district court ruled that Defendant violated the FMLA, 29 U.S.C. §§ 2615(a)(1) and 2614(a), by failing to reinstate Plaintiff to her position on the door line or an equivalent position by June 28, 2000. The district court ruled that Plaintiff had a right to restoration to her door line position or an equivalent under 29 U.S.C. § 2614(a), notwithstanding the fact that she continued to have permanent physical restrictions associated with her back injury. The lower court also found that it was undisputed that "Defendant had several jobs which Plaintiff could perform as to all essential functions, since she [was] currently working in such position and ha[d] been in one or more of such positions since her return to work on July 31, 2000." The district court also rejected Defendant's argument that 29 U.S.C. § 2614 permits employers a "reasonable time" to reinstate an eligible employee returning from approved FMLA leave, concluding that Defendant violated the FMLA by failing to reinstate Plaintiff to a position by June 28. The court, however, also dismissed Plaintiff's argument that she was entitled to immediate restoration on June 27 because, in its view, the undisputed evidence revealed that she failed to give Honda any advance notice of her return. The district court further ruled that Plaintiff could not recover lost wages associated with her gradual return to work because Plaintiff's physician approved the GRTW program and Plaintiff did not object. The district court found no evidence that Plaintiff made any attempt to take advantage of Honda's policy which permitted any associate to terminate a gradual return to work

program and to return to full-time employment with physician approval.

The court denied Plaintiff's motion for liquidated damages under 29 U.S.C. § 2617(a)(1)(A) and granted Plaintiff's application for attorneys' fees and costs under 29 U.S.C. § 2617(a)(3). The district court awarded Plaintiff $18,112.50 in attorneys' fees and $1,244.99 in costs.

## II. STANDARD OF REVIEW

We review the district court's summary judgment determinations under Federal Rule of Civil Procedure 56 *de novo*. *Arban v. West Publ'g Corp.*, 345 F.3d 390, 400 (6th Cir. 2003). Summary judgment is appropriate

if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). In addition, "[w]e may affirm a decision of the district court if correct for any reason, including one not considered below." *United States Postal Serv. v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 330 F.3d 747, 750 (6th Cir. 2003).

This court reviews an award of liquidated damages under the FMLA under the same standard used for such determinations under the Fair Labor Standards Act. *Chandler v. Specialty Tires of Am.*, 283 F.3d 818, 827 (6th Cir. 2002). Thus, we review the lower court's ruling on liquidated damages for an abuse of discretion. *Id.*

## III. DISCUSSION

### A. The FMLA

The FMLA entitles an eligible employee to as many as twelve weeks of leave during any twelve-month period if the employee has a "serious heath condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The statute defines "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." *Id.* at § 2611(11). An employee seeking to use his FMLA leave must notify the employer that FMLA-qualifying leave is needed. *Arban.*, 345 F.3d at 400; *Chandler*, 283 F.3d at 825; *Brohm v. JH Props., Inc.*, 149 F.3d 517, 523 (6th Cir. 1998). The FMLA also gives the Secretary of Labor notice and comment rule-making authority and directs the Secretary to issue regulations "necessary to carry out" the Act. 29 U.S.C. § 2654; *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 86 (2002).

This court recognizes two distinct theories for recovery under the FMLA: (1) the "entitlement" or "interference" theory arising from 29 U.S.C. § 2615(a)(1); and (2) the "retaliation" or "discrimination" theory arising from 29 U.S.C. § 2615(a)(2). As this court has stated, "[t]he [FMLA] creates 'prescriptive and proscriptive employee rights.'" *Taylor v. Union Inst.*, 30 Fed.Appx. 443, 2002 WL 252443, at *7 (6th Cir. Feb. 19, 2002) (unpublished opinion) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir. 1998)); *see also Arban*, 345 F.3d at 400-01.

Plaintiff's claim rests on the "interference" theory. The interference provision of the Act, § 2615(a)(1), creates prescriptive rights. *Taylor*, 30 Fed.Appx at 452, 2002 WL 252443, at *7. It provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or

the attempt to exercise, any right provided in this subchapter." 29 U.S.C. § 2615(a)(1); *see also* 29 C.F.R. § 825.220(b). To prevail on a claim for violation of an employee's prescriptive rights under § 2615(a)(1), the plaintiff need not show that he was treated worse than other employees, just that he was denied an entitlement under the Act. *Taylor*, 30 Fed. Appx. at 452, 2002 WL 252443, at \*7. An employer may violate § 2615(a)(1) regardless of the intent behind its conduct. *Arban*, 345 F.3d at 401; *Hodgens*, 144 F.3d at 159.

### B. Restoration Under 29 U.S.C. § 2614(a)

To prevail on her interference claim under § 2615(a)(1), Plaintiff must establish that Honda interfered with a FMLA right to medical leave or to reinstatement following FMLA leave. *Arban*, 345 F.3d at 401; *see also Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003). Hoge must establish that: (1) she was an eligible employee, (2) Honda is a covered employer, (3) she was entitled to leave under the FMLA, (4) she gave Honda notice of her intent to take leave, and (5) Honda denied her FMLA benefits or interfered with FMLA rights to which she was entitled. *Cavin*, 346 F.3d at 719. The parties do not dispute the first four of these elements; their dispute turns on the fifth. Plaintiff maintains, and the lower court ruled, that Honda interfered with Plaintiff's FMLA rights and entitlement to restoration to her position on the door line or an equivalent under 29 U.S.C. § 2614. Honda maintains that Hoge's right to restoration under the Act required it to restore her only within a reasonable time after she was capable of returning.

The FMLA not only grants the statutory right for an eligible employee to take up to twelve weeks of leave, but also creates the concomitant right for an employee who has taken leave "to be restored by the employer to the position of employment held by the employee when the leave commenced." 29 U.S.C. § 2614(a)(1)(A); *Pharakhone v. Nissan N. Am., Inc.*, 324 F.3d 405, 407 (6th Cir. 2003).

Section 2614(a) describes the FMLA restoration right. It provides, in relevant part:

(a) Restoration to position

(1) In general

Except as provided in subsection (b) of this section, any eligible employee who takes leave under section 2612 of this title for the intended purpose of the leave shall be entitled, *on return from such leave--*

(A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or

(B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

. . .

(3) Limitations

Nothing in this section shall be construed to entitle any restored employee to-

. . .

(B) any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave.

29 U.S.C. § 2614(a) (emphasis added).[1]

---

[1]An "equivalent position" under 29 U.S.C. § 2614(a)(1)(B) is one that is virtually identical to the employee's former position

The Secretary of Labor has also promulgated a regulation describing employee rights on returning from FMLA leave. 29 C.F.R. § 825.214. It provides:

(a) On return from FMLA leave, an employee is entitled to be returned to the same position the employee held when leave commenced, *or to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment. An employee is entitled to such reinstatement even if the employee has been replaced or his or her position has been restructured to accommodate the employee's absence.* See also § 825.106(e) for the obligations of joint employers.

(b) If the employee *is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition, the employee has no right to restoration to another position under the FMLA.* However, the employer's obligations may be governed by the Americans with Disabilities Act (ADA). See § 825.702.

*Id.* (emphases added).

There are a few limitations (sometimes referred to as exceptions) on an employee's right to restoration upon timely return from FMLA leave under § 2614(a). First, the substantive right is not absolute because the right established "shall [not] be construed to entitle any restored employee to . . . any right, benefit, or position of employment other than any right, benefit, or position to which the employee would

in terms of pay, benefits and working conditions, including privileges, perquisites and status. It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority.

29 C.F.R. § 825.215(a).

have been entitled had the employee not taken the leave." 29 U.S.C. § 2614(a)(3)(B); 29 C.F.R. § 825.216(a) ("An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period."). An employee returning from FMLA leave is not entitled to restoration unless he would have continued to be employed if he had not taken FMLA leave. For instance, an employer need not restore an employee who would have lost his job or been laid off even if he had not taken FMLA leave. *See Arban*, 345 F.3d at 401; *Pharakhone*, 324 F.3d at 407; *Chandler*, 283 F.3d at 825.

In addition, the right to restoration does not arise unless the returning employee is able to perform the essential functions of the position or an equivalent. 29 C.F.R. § 825.214(b) ("If the employee is unable to perform an essential function of the position because of a physical or mental condition, including continuation of a serious health condition, the employee has no right to restoration to another position under the FMLA."); *See also Green v. Alcan Aluminum Corp.*, 198 F.3d 245, 1999 WL 1073686, at *2 (6th Cir. Nov. 16, 1999) (unpublished opinion) (no FMLA violation when twelve weeks expired and plaintiff could not perform essential functions); *Reynolds v. Phillips & Temro Indus., Inc.*, 195 F.3d 411, 414 (8th Cir. 1999) (quoting 29 C.F.R. § 825.214(b)).

Next, the FMLA permits employers to apply a uniform policy or practice that conditions restoration under § 2614(a) on the receipt of medical certification from the employee's healthcare provider stating that the employee is able to resume work. 29 U.S.C. § 2614(a)(4). Further, an employer may delay restoration until an employee submits the required "fitness-for-duty" certification. 29 C.F.R. §§ 825.310(f), 825.311(c) & 825.312(c). However, the regulations permit an employer to seek such a fitness-for-duty certification "only with regard to the particular health condition that caused the employee's need for FMLA leave." 29 C.F.R. § 825.310(c).

None of these limitations to Hoge's right to restoration apply. Honda does not dispute Plaintiff's right to restoration or argue that any of the above limitations apply. Rather, Honda disputes the timing of its duty to restore Hoge to an equivalent position, arguing that the terms and structure of the FMLA required it to restore Hoge to an equivalent position only within a reasonable time after learning of her readiness to work under the circumstances in her case. Honda asks this Court to reverse the district court's ruling and enter summary judgment on its behalf because there is no genuine issue of fact that Honda complied with the FMLA's requirement to restore Plaintiff within a reasonable time after learning she was ready to return to work. It argues that the FMLA should be read *in pari materia* with the Americans With Disabilities Act ("ADA") and that employers must be afforded a reasonable amount of time to evaluate whether an employee is disabled, to identify reasonable accommodations, and to minimize potential liability under other federal and state laws. In short, Honda asks this court to read a reasonableness element into the timing of when a returning employee is entitled to restoration under 29 U.S.C. § 2614(a) where such an element does not exist in the text.

We decline Honda's invitation. "The starting point in interpreting a statute is its language, for '[i]f the intent of Congress is clear, that is the end of the matter.'" *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993) (quoting *Chevron U.S.A. Inc. v. Natural Res. Defense Council, Inc.,* 467 U.S. 837, 842 (1984)). If clear, the plain meaning of the statutory language controls; departure from the plain language of a statute is appropriate only in "'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafter . . . or when the statutory language is ambiguous.'" *Kelley v. E.I. DuPont de Nemours & Co.*, 17 F.3d 836, 842 (6th Cir. 1994) (citation omitted). Moreover, "we ordinarily resist reading words or elements into a statute that do not appear on its face." *Bates v. United States*, 522 U.S. 23, 29 (1997). In fact, courts have a duty to refrain from reading a

phrase into a statute when Congress has left it out. *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993); *United States v. Health Possibilities, P.S.C.*, 207 F.3d 335, 339-40 (6th Cir. 2000). As we have stated before: "'It is not the Court's role to address perceived inadequacies in [a statute].'" *In re Aberl*, 78 F.3d 241, 244 (6th Cir. 1996) (quoting *Wolf Creek Collieries v. Robinson*, 872 F.2d 1264, 1269 (6th Cir. 1989) (alteration in original)).

The FMLA's text, set forth in more detail above, provides that an employee returning from FMLA leave "shall be entitled, *on return from such leave* – . . . to be restored by the employer" to his prior position or an equivalent position with the same conditions of employment. 29 U.S.C. § 2614(a). The plain meaning of "on return from such leave" is not ambiguous and, contrary to Honda's argument, will not be construed to mean "within a reasonable time after the employee is able to return from such leave." If an employee returning from FMLA leave can perform the essential functions of his previous or an equivalent position, the right to restoration is triggered on the employee's timely return from leave. 29 U.S.C. § 2614(a); 29 C.F.R. § 825.214(b). If Congress had intended to permit employers to restore employees within a reasonable time after their need for FMLA leave had ended, it would have so stated. *See* 42 U.S.C. § 12112(b)(5)(A) (discrimination under the ADA includes "not making *reasonable* accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability"). The text of the FMLA makes restoration required once an employee's entitlement arises (i.e., once he is capable of performing the job's essential functions). It also provides an employer the ability to condition restoration upon medical certification that the employee is able to return to work. The clear import of this language requires restoration upon return, unless one of the specific limitations or exceptions apply. *See Chandler*, 283 F.3d at 825 ("With exceptions not at issue here, an employer is obliged to restore the employee to her prior position or an equivalent position upon return from leave.").

Moreover, because "[a]n employee may not be required to take more leave than necessary to address the circumstances for which leave was taken," an employer would violate the FMLA's prohibition against interfering with FMLA rights if it decided to extend an employee's leave anytime such an extension would be "reasonable" under the circumstances. 29 C.F.R. § 825.312(e); 29 U.S.C. § 2615(a)(1).

Although the FMLA does not define the time when an employee's "return" from FMLA leave becomes effective, thus triggering an employer's duty to restore a returning employee, the FMLA's regulatory scheme specifically contemplates circumstances where the date of an employee's return from FMLA leave may change. Ordinarily, the employer and employee will communicate and establish the return date for an employee taking FMLA leave. In such cases, the timing of the employee's "return" will not be at issue and the restoration entitlement will arise when the employee returns in a timely manner and in a physical condition to perform the essential functions of the position he left, and after providing the medical certification if required by an employer under 29 U.S.C. § 2614(a)(4). In fact, 29 C.F.R. § 825.309 facilitates communications regarding the return date for an employee on FMLA leave by permitting an employer to "require an employee on FMLA leave to report periodically on the employee's status and intent to return to work."

Moreover, the FMLA regulations specifically address circumstances in which an employee needs to use more or less FMLA leave time than originally anticipated. In such cases, employers are entitled to reasonable notice of an employee's return.

It may be necessary for an employee to take more leave than originally anticipated. Conversely, an employee may discover after beginning leave that the circumstances have changed and the amount of leave originally anticipated is no longer necessary. An

employee may not be required to take more FMLA leave than necessary to resolve the circumstance that precipitated the need for leave. *In both of these situations, the employer may require that the employee provide the employer reasonable notice (i.e., within two business days) of the changed circumstance where foreseeable.* The employer may also obtain information on such changed circumstances through requested status reports.

29 C.F.R. § 825.309(c) (emphasis added). Section 825.312(e) of the Department of Labor's FMLA regulations further provides: "If the employee is able to return to work earlier than anticipated, the employee shall provide the employer two business days notice where feasible; the employer is required to restore the employee once such notice is given." 29 C.F.R. § 825.312(e).

In this case, Hoge was originally expected to return from her abdominal surgery leave on June 12, 2000. As of that date, Honda would have been aware that it would be required to restore her to work. It is undisputed, however, that Hoge requested an extension of her FMLA leave beyond June 12. The record does not establish her new expected return date and the parties dispute whether Honda had reason to expect her return on the morning of June 27. If her early return from approved leave was not anticipated, then the regulations governing an employee's early return from FMLA leave apply. Under 29 C.F.R. §§ 825.309(c) and 825.312(e), Plaintiff was required to provide Honda reasonable notice (i.e., two business days) that she would be returning sooner than expected. Thus, by showing up for work at the beginning of the work day, Hoge put Honda on reasonable notice that she was ready and capable of returning to the position that she left (with the accommodation of her physical limitations associated with her back injury) or its equivalent.

If Honda did not have reasonable notice of Hoge's return date, it was not required to permit Plaintiff to return to work

until June 29, 2000, two business days after receiving notice of her willingness and ability to return to work. Conversely, if Honda did have reasonable notice that Hoge's extension of FMLA leave was to end on June 26, 2000, it was required to restore her to a door line position or an equivalent on June 27, 2000 because it does not dispute that Hoge was capable of performing the essential functions of such a position.

Honda argues that the FMLA has no time limit on when restoration must occur and that restoration of an employee need only be reasonable under the circumstances. Honda claims that an "immediate restoration" rule is not required by the text of § 2614(a) because it is silent as to the timing of when an employer must restore an employee returning from FMLA leave. It argues that the flexible process contemplated by the statutory structure mandates that the court impart a reasonableness element to an employer's duty to restore an employee under § 2614(a). Honda also argues that the FMLA should be read *in pari materia* with the ADA and that failing to read a reasonableness requirement into an employer's duty to restore an employee under § 2614(a) would expose employers to potential ADA and state law liability. We are not persuaded.

As discussed above, the language found in § 2614(a) is not ambiguous. Additionally, the structure of the FMLA does not require the court to read a reasonableness element into the restoration provision. The provision permitting an employer the opportunity to restore an employee to the same position or an equivalent does not express clear Congressional intent to permit employers a reasonable time to delay restoration. The "equivalent position" provision under § 2614(a)(1)(B) recognizes the dynamic needs of employers and permits them to restore employees to positions other than the exact one they left, but it does not permit the employer to delay an employee's restoration for a "reasonable time" after returning from FMLA leave. Likewise, the requirement under 29 C.F.R. § 825.214(b) that a returning employee be capable of performing the essential functions of the job does not

impart a reasonable delay period for the employer to find a suitable position.

The right to restoration arises when the employee is able to perform the essential functions of the position he left or an equivalent. If an employee can do so and has provided medical certification (if required by a uniform policy), the employer cannot simply delay restoration while it takes a reasonable amount of time to find a suitable position. Again, a "reasonable" delay in restoration after reasonable notice is given would force the employee to take more FMLA leave than is required and would interfere with an employee's exercise of FMLA rights. 29 U.S.C. § 2615(a)(1); 29 C.F.R. § 825.312(e).

Next, we are not persuaded by Defendant's argument to read the FMLA *in pari materia* with the ADA because the statutes deal with the same subject. *See Jones v. St. Louis-San Francisco Ry. Co.*, 728 F.2d 257, 262 (6th Cir. 1984). Although the FMLA and the ADA both regulate the employer-employee relationship, they protect an employee in different ways. We have recently highlighted this distinction.

> The FMLA protects an employee from adverse action as a result of his taking leave for a serious medical condition. It does not protect an employee from adverse action motivated by the underlying medical condition itself. Although the factual scenarios that give rise to an FMLA or ADA cause of action may often coincide, the legal entitlements that flow from these facts will differ.

*Chandler*, 283 F.3d at 825. "The ADA and the FMLA have divergent aims, operate in different ways, and offer disparate relief." *Navarro v. Pfizer Corp.*, 261 F.3d 90, 101 (1st Cir. 2001); *Watkins v. J & S Oil Co.*, 164 F.3d 55, 62 (1st Cir. 1998) (FMLA and ADA "causes of action may interrelate, [but] they involve separate and distinct statutory claims"). Unlike the FMLA, the finding of a disability is the key "that unlocks the storehouse of statutory protections" under the

ADA. *Navarro*, 261 F.3d at 101. The ADA prohibits discrimination against employees who have a disability as defined by the statute. 42 U.S.C. § 12112(a). An employer must make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." *Id.* at § 12112(b)(5)(A).

Honda argues that Plaintiff's return raised potential application of the ADA and that the FMLA should be read to include a reasonableness element like the ADA. Honda contends that it should be given reasonable time to find a position as a reasonable accommodation of Plaintiff's physical restrictions. This argument is unavailing. "[T]he leave provisions of the [FMLA] are wholly distinct from the reasonable accommodation obligations of employers covered under the [ADA]." 29 C.F.R. § 825.702(a).

The ADA implications surrounding Hoge's physical limitations existed prior to her FMLA leave associated with her abdominal surgery and the uncontested evidence shows that she was capable of performing the essential functions of the position which she left. As such, Honda was not confronted with new potential ADA liability. Honda points out that courts have recognized that an employer's inquiry under the ADA to identify alternative positions is a time consuming process and that an employer is permitted a reasonable time to make a "reasonable accommodation" inquiry under the ADA. *See Kiphart v. Saturn Corp.*, 251 F.3d 573, 586 (6th Cir. 2001) ("When job reassignment is appropriate [under the ADA], an employer 'should reassign the individual to an equivalent position . . . if the individual is qualified, and if the position is vacant within a reasonable amount of time.'") (quoting 29 C.F.R. § 1630.2(o)); *see also Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 457 (6th Cir. 2004); *Burns v. Coca-Cola Enters.*, 222 F.3d 247, 257 (6th Cir. 2000). Because the *ADA* may permit a reasonable time to make accommodations for statutorily disabled employees, does not however, impact the *FMLA's* right to restoration. 29 C.F.R. § 825.702(a) ("An employer must [ ] provide leave

under whichever statutory provision provides the greater rights to employees. When an employer violates the FMLA and a discrimination law, an employee may be able to recover under *either or both* statues.") Under 29 U.S.C. § 2614(a), an employee is entitled to be restored if he can perform the essential functions of his job. If he can, he is entitled to restoration and no potential ADA liability exists because he is capable of doing the work done previously. If he cannot, no FMLA liability follows for failing to restore that employee. However, the employer must *then* also look to the separate and distinct potential for liability under the ADA or other statutes.

The position Hoge left accommodated her physical limitations associated with her back injury and Honda was required to restore her to that position or an equivalent upon her return. Honda does not argue that it did not have an equivalent position or that Plaintiff could not perform the essential functions of such an equivalent position.

Next, Honda's assertion that construing § 2614(a) to include an "immediate" right to restoration on return from FMLA leave would render certain regulations passed by the Secretary of Labor invalid is without merit. The FMLA requires restoration "on return" from leave and the regulations that permit delay in restoration merely identify *when an employee's return is effective*, triggering the right to restoration. These regulations are therefore not inconsistent with the statute. Although we recognize Honda's potential needs to juggle the realties of a dynamic business environment with its obligations under the FMLA, its policy arguments (offered to support reading an implicit reasonableness requirement into the statutory language) necessarily fall on deaf ears. Such policy arguments are more appropriately addressed to the United States House of Representatives and Senate. *See In re Aberl*, 78 F.3d at 244. The text is not ambiguous and the structure of the FMLA does not impart a reasonableness element into 29 U.S.C. § 2614(a).

We affirm the district court inasmuch as Honda was required to restore Plaintiff to her previous position or its equivalent starting at least on June 29, 2000 (two business days after receiving unambiguous notice of her return). However, an issue of fact exists as to whether Honda anticipated Hoge's return on June 27, 2000. If Honda, in fact, had reasonable notice that Plaintiff's FMLA leave was to end on June 27, 2000, she was entitled to restoration on that date.

### C. Liquidated Damages

Section 2617(a)(1)(A)(iii) of the FMLA provides that an employer shall be liable for an amount of liquidated damages, in addition to compensatory damages equal to the amount of wages, salary, employment benefits, or other compensation denied or lost to an employee, plus interest, by reason of an employer's violation of 29 U.S.C. § 2615. *Chandler*, 283 F.3d at 827. Although liquidated damages are the norm in cases where an employer violates § 2615, the district court may reduce such an award to comprise only compensatory damages if the employer "proves to the satisfaction of the court that the act or omission which violated section 2615 . . . was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of section 2615." 29 U.S.C. § 2617(a)(1)(A)(iii). "The employer must therefore show *both* good faith *and* reasonable grounds for the act or omission." *Chandler*, 283 F.3d at 827 (emphases in original).

The record supports the district court's finding that Honda had both a good faith belief that it had a reasonable time to find Plaintiff an equivalent position based on her physical restrictions and that Honda's interpretation of the FMLA's restoration provision was objectively reasonable. As noted by the district court, the evidence reveals that Hoge was on FMLA leave when Honda implemented a gradual model changeover which affected its production line positions. Plaintiff had significant physical restrictions regarding her job capabilities and Honda located a position for Plaintiff within

one month after learning that she was ready to return to work. Honda made efforts to examine its new positions in light of the model changeover and Hoge's physical restrictions. This evidence supports the district court's good faith conclusion. Also, the unsettled nature of the timing of an employer's duty to restore an employee returning from FMLA leave under the circumstances provides a basis for the district court's finding that Honda's interpretation of 29 U.S.C. § 2614(a) was objectively reasonable. There was no abuse of discretion and we affirm the district court's decision to deny liquidated damages.

### D. Plaintiff's Gradual Return to Work

Plaintiff cross-appeals the district court's conclusion that she was not entitled to damages on her FMLA claim associated with her gradual return to work. The district court rejected Plaintiff's argument that she was not fully restored to an equivalent position until the end of her gradual return to work policy. It noted that the GRTW program was approved by Hoge's family physician and that it was "undisputed that Plaintiff did not object to the gradual program" notwithstanding Honda's policy which permitted her to terminate the program and return to full-time employment with physician's approval at any time. The district court found "no evidence that Plaintiff made any [attempt to end the GRTW program] in this case. Thus, the Court [could not] conclude that the simple fact that Plaintiff was placed on a gradual return to work schedule was a violation of the restoration provisions of the FMLA."

We agree. Plaintiff's family physician, Dr. Joseph Ottaviano, approved the GRTW program. Further, Plaintiff agreed to her gradual return and failed to object. The undisputed evidence reveals that Plaintiff could have elected to terminate the GRTW program at any time with her physician's approval, and that she failed to do so, even after obtaining a lawyer. Plaintiff argues that Honda did not return her to an "equivalent position" because she did not receive

her regular full-time pay and benefits. Plaintiff complains that she was not returned to a job with the same hours and pay, but understates the importance of the option she always possessed to resume working full time under the GRTW program. By providing Plaintiff with the option to return to full-time work (with her own physician's approval), Honda placed the key in Plaintiff's hand, and thus provided Plaintiff with an equivalent position under 29 C.F.R. § 825.215(a).

Plaintiff also relies on 29 C.F.R. § 825.220(d) to support her argument that Honda induced her to waive her FMLA rights. Section 825.220(d) provides:

> Employees cannot waive, nor may employers induce employees to waive, their rights under FMLA. For example, employees (or their collective bargaining representatives) cannot "trade off" the right to take FMLA leave against some other benefit offered by the employer. This does not prevent an employee's voluntary and uncoerced acceptance (not as a condition of employment) of a "light duty" assignment while recovering from a serious health condition (see § 825.702(d)).

29 C.F.R. § 825.220(d).

Plaintiff claims that she did not request the GRTW program and that she was directed to sign the GRTW form before returning to work. Plaintiff stated: "I was told I needed to sign the form before I could start my shift." (Pl.'s Aff. at 2; JA 272.) This evidence, however, is not sufficient to establish that Honda induced or coerced Plaintiff into waiving her FMLA rights. Plaintiff's acceptance of the GRTW program under these circumstances does not constitute a waiver of rights. This is especially true because she agreed to a restoration program that permitted her to end the gradual component of her return to work at any time. Because Plaintiff had the undisputed ability to return to work full time on the engine line any time after being restored, Honda did

not induce her to waive her right to restoration to an equivalent position under the FMLA.

## CONCLUSION

For the reasons stated herein, the judgment of the district court is AFFIRMED IN PART, REVERSED IN PART, and this matter is REMANDED for further proceedings consistent with this opinion.