**NOT RECOMMENDED FOR PUBLICATION**
File Name: 13a0493n.06

**No. 12-1286**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| TRACEY K. MADRY, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellant, | ) | *May 16, 2013* |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| GIBRALTAR NATIONAL CORPORATION | ) | MICHIGAN |
| d/b/a QUIKRETE OF MICHIGAN, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

Before: SILER, GIBBONS, and GRIFFIN, Circuit Judges.

**SILER**, Circuit Judge. Tracey K. Madry brought this lawsuit against her former employer, Gibraltar National Corporation ("Gibraltar"), alleging that her employment was unlawfully terminated in violation of the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2601, *et seq.* Madry appeals the district court's grant of summary judgment in favor of Gibraltar. For the reasons that follow, we **AFFIRM**.

**I.**

In 2004, Madry was hired by Gibraltar to work in its accounts receivable department, located in Detroit, Michigan. Although Gibraltar was acquired by The Quikrete Companies, Inc., in 2006, Madry continued her employment uninterrupted. Madry became pregnant around March 2008. Her physician certified that she was pregnant and that she would need to take leave from October 17,

2008 until February 1, 2009. The plant manager, Dennis Struzik, approved Madry's request for FMLA leave.

Prior to commencing leave, Madry spent a week training Alison Dascenza to perform the specific accounts receivable work that Madry had been performing. Dascenza worked for Gibraltar from 1991 through 1994 and was rehired in early 1996 to work as a dispatcher. Beginning in September 2008, prior to Madry's leave, Dascenza was reassigned from dispatch to accounts receivable to replace an employee who had voluntarily left the company. Dascenza worked on liens and collections, while Madry worked on billing and credits. When Madry went on leave on October 17, 2008, Dascenza assumed the responsibility for billing and credits as well.

Around the end of January 2009, Madry spoke with her direct supervisor, Nicole Harbin, about returning to work. Harbin informed Madry that she was being laid off because of a lack of work. Madry filed suit, claiming that she was terminated in violation of the FMLA. Gibraltar was granted summary judgment and Madry timely appealed.

**II.**

We review the grant of summary judgment *de novo*. *Whittlesey v. Cole*, 142 F.3d 340, 342 (6th Cir. 1998). Summary judgment is proper where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

**III.**

Under the FMLA, Gibraltar was prohibited from interfering with, restraining, or denying the exercise of any right to which Madry was entitled. 29 U.S.C. § 2615(a)(1). Madry claims that,

pursuant to 29 U.S.C. § 2614(a)(1), she was entitled either to be restored to the position she held before she took leave or to be restored to an equivalent position. We recognize two distinct theories for recovery under the FMLA: (1) the entitlement or interference theory, and (2) the retaliation or discrimination theory. *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004). Madry is seeking recovery solely under the entitlement theory.

FMLA claims based on an entitlement theory are analyzed under the burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Donald v. Sybra, Inc.*, 667 F.3d 757, 762-63 (6th Cir. 2012). Thus, Madry has the burden to demonstrate a *prima facie* case of entitlement under the FMLA. *See McDonnell Douglas*, 411 U.S. at 802. The burden then shifts to Gibraltar to articulate a "legitimate, nondiscriminatory reason" for Madry's termination. *Id.* If Gibraltar succeeds in producing evidence of a legitimate reason, the burden shifts back to Madry to show that Gibraltar's proffered legitimate reason "was in fact pretext." *Id.* at 804.

### A. Prima Facie Case

To prevail on her entitlement theory claim, Madry must prove that: (1) she was an eligible employee, (2) Gibraltar was an employer as defined under the FMLA, (3) she was entitled to leave under the FMLA, (4) she gave Gibraltar notice of her intention to take leave, and (5) Gibraltar denied her FMLA benefits to which she was entitled. *Grace v. USCAR*, 521 F.3d 655, 669 (6th Cir. 2008). Gibraltar concedes that Madry has established the first four elements, but argues that she cannot show that she was entitled to be restored to her position. The district court thought otherwise and found that Madry had established her *prima facie* case because she was "ready, willing, and able to return to work at the conclusion of her leave."

Gibraltar's argument that Madry was not entitled to be reinstated, and thus that she has not proven her *prima facie* case, is premised on the idea that it would have laid her off regardless of her FMLA leave because of a lack of work. Gibraltar cites several cases which demonstrate that entitlement to reinstatement is not absolute where the employer can show a legitimate, nondiscriminatory reason for failing to restore employment. *See, e.g.*, *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315-17 (6th Cir. 2001) (holding that the plaintiff was not entitled to reinstatement because his position was eliminated when the company restructured its operations). However, this argument ignores the *McDonnell Douglas* framework. Madry has the burden of proving her *prima facie* case before Gibraltar offers a legitimate reason for her termination. *See id.* at 315 (finding that the plaintiff established a *prima facie* case even tough the defendant was able to counter with a legitimate reason for the termination). Thus, Gibraltar's argument is out of place and will be considered during the second step of the *McDonnell Douglas* framework**.**

### B. Legitimate Reason for Madry's Termination

Gibraltar has offered evidence that its legitimate, nondiscriminatory reason for failing to restore Madry's employment was a lack of work caused by a downturn in business. Gibraltar has provided economic, production, and labor data to support its position. The data shows that sales at its Detroit and Flint[1] facilities dropped 24% in December 2008 when compared to December 2007. The data further shows that sales dropped 14% in January 2009 when compared to January 2008.

---

[1] The Flint facility did not have an accounts receivable clerk. The accounts receivable work from Flint was handled by the accounts receivable clerk(s) from the Detroit facility, and thus is relevant in considering Gibraltar's proffered reason.

Additionally, the data shows that production units dropped 32% and 47% during those same periods. Lastly, the data shows that labor hours worked dropped by 30% and 17% during December 2008 and January 2009 when compared to the previous year.

Gibraltar further bolsters its proffered reason with evidence that it laid off four other employees in November 2008 for "lack of work." One of those employees, Sally Schneider, was in the "clerical" department, the same department as Madry. The other three employees were production line employees. Thus, Gibraltar contends that Madry would have been laid off regardless of her FMLA leave because it made a legitimate business decision to cut costs in the face of decreased sales.

Pursuant to 29 U.S.C. § 2614(a)(3)(B), no employee is entitled to "any right, benefit, or position of employment other than . . . [that] to which the employee would have been entitled had the employee not taken the leave." More specifically, "[a]n employee returning from FMLA leave is not entitled to restoration unless he would have continued to be employed if he had not taken FMLA leave." *Grace*, 521 F.3d at 669 (quoting *Hoge*, 384 F.3d at 245).

Here, Gibraltar has offered a legitimate, nondiscriminatory reason for failing to restore the employment of Madry, an at-will employee, that indicates that her employment would not have continued even if she had not taken FMLA leave. *Hoge*, 384 F.3d at 245 ("an employer need not restore an employee who would have lost his job or been laid off even if he had not taken FMLA leave"). Thus, Gibraltar has met its burden to articulate a legitimate, nondiscriminatory reason for failing to restore Madry's employment.

### C. Pretext

In order to survive summary judgment, Madry bears the burden of showing that there is a genuine dispute as to whether Gibraltar's proffered legitimate reason, a lack of work, is in fact pretextual. *See Donald*, 667 F.3d at 761-63. On appeal, Madry only argues that Gibraltar's proffered reason has no basis in fact.

Madry makes four specific arguments as to why Gibraltar's proffered reason has no basis in fact. First, she argues that Schneider, the clerical employee laid off during Madry's FMLA leave for a "lack of work," was a problem employee who was at best laid off for multiple reasons and at worst because she performed poorly. Second, she argues that the economic data from October 2008 through January 2009 does not support Gibraltar's claim that it suffered a downturn in business, but in fact shows that business was slightly increasing. Third, she argues that any terminations occurring after February 2009 are irrelevant to her claim and Gibraltar's proffered reason for her termination. Finally, she argues that Gibraltar did not produce any company communications from around the time of her leave and termination that indicate a necessity for company layoffs as a result of reduced business.

### 1. Schneider's Termination

Madry argues that the precise reason for Schneider's termination is "open to doubt," and labels her as a "problem employee." Madry cites Schneider's final performance review and her reputation among other employees. Viewing the evidence in the light most favorable to Madry, at best it could be found that Schneider was terminated for multiple reasons, but a lack of work would be one of those reasons. Moreover, this argument cannot negate Gibraltar's proffered reason for

Madry's termination by itself. Gibraltar has offered Schneider's termination as an example of another similarly situated employee who was terminated around the same time as Madry for a lack of work. Even if Schneider was terminated for additional reasons, Gibraltar's proffered reason, a lack of work, cannot be rebutted as pretextual on this ground. Thus, this argument is not persuasive.

### 2. Economic Data from October 2008 through January 2009

Madry's main contention involves the interpretation of the economic data. She notes that the combined sales for the Detroit and Flint facilities from October 2008 through January 2009 increased by 1.7% when compared with sales from October 2007 through January 2008. Additionally, she notes that the total number of units produced in 2008 was 7.7% higher than in 2007. Based on these figures, Madry argues that it is hard to give credence to Gibraltar's assertion that her termination "was the product of declining sales."

Madry does not argue that a lack of work would be an insufficient reason for her termination. We have previously found that the restructuring of a business was a legitimate, nondiscriminatory reason for terminating an employee who had incidentally taken FMLA leave. *See Skrjanc*, 272 F.3d at 315 (employee laid off after the company restructured its operations for economic reasons). Thus, the specific issue here is whether there is a genuine dispute of fact as to whether there was a lack of work.

Madry's argument falls short of creating a genuine dispute of material fact. Although sales may have been slightly up (1.7%) during the entirety of the four months that Madry was on leave, the most important time to consider is the month or months immediately prior to Madry's termination. This is so because in order for an employer to deny restoration, it must be able to show

"that an employee would not otherwise have been employed *at the time reinstatement is requested* . . . ." 29 C.F.R. § 825.216(a) (emphasis added). Madry requested reinstatement around the end of January 2009, making December 2008 and January 2009 the most relevant periods in assessing Gibraltar's proffered reason. During those months, sales were down 24% and 14%, respectfully, from the previous year. Further, production units were down 32% and 47%, respectively, during those same months. Despite any other time period assessments, it is clear that Gibraltar's business was in decline during the two months prior to Madry's termination. Thus, we reject Madry's interpretation of the economic data.

Moreover, to the extent that Madry argues that Gibraltar is required to show that her termination was economically required, her argument fails. Reducing labor costs and improving efficiency are valid business reasons for conducting layoffs, even when the degree to which such actions are motivated by economic hardship is debatable. *See Aldridge v. City of Memphis*, 404 F. App'x 29, 37-39 (6th Cir. 2010) (holding, against a charge of race and sex discrimination, that the municipality's reorganization of the rank system for its police officers on "grounds of efficiency" was not pretextual regardless of whether the decision was based on "a 'serious financial situation' *requiring* cost-cutting or a mere desire to eliminate financial inefficiency"); *Gatch v. Milacron, Inc.*, 111 F. App'x 785, 791 (6th Cir. 2004) (recognizing that even if the reduction in force "was not entirely necessary from a business standpoint," it was not a pretext for age discrimination because the "evidence simply d[id] not permit a finding that age discrimination rather than business judgment motivated" the decision).

### 3. Terminations after February 2009

In its opinion and order granting Gibraltar's motion for summary judgment, the district court noted that Gibraltar had met its burden of articulating a legitimate, nondiscriminatory reason for Madry's termination and cited several pieces of evidence in the record for support. This included the fact that Gibraltar "laid off three additional employees in late 2009, nine employees in 2010, and two more employees in early January of 2011 all due to 'lack of work.'"

However, the terminations by Gibraltar after February 2009 should not be considered in determining whether Gibraltar's proffered reason was pretextual at the time of Madry's termination. *See Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998) ("[I]n order for an employer's proffered non-discriminatory basis for its employment action to be considered honestly held, the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made."). Nevertheless, this evidence is not necessary in finding Gibraltar's proffered reason legitimate, as the decrease in sales and production units in December 2008 and January 2009, as well as the layoffs in November 2008, amply support Gibraltar's burden of production.

### 4. Company Communications

Madry lastly contends that Gibraltar's proffered reason is pretextual because if it were legitimate, there would have been some sort of company communication announcing the necessity for the company to lay off employees around the time of her termination. This is irrelevant. "In deciding whether an employer reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned.

Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Smith*, 155 F.3d at 807.

Here, Struzik, the Plant Manager, and Harbin, Madry's supervisor, made the decision to lay her off after sales had declined for two months. Struzik reported that "as manager, it's up to us to manage the business, and with sales declining as they were we have to look at everything, and labor of course is right at the top of the list, and that's where a decision [was] made." The fact that Gibraltar produced no formal communications regarding the necessity to lay off employees does not render its decision unreasonable. Thus, this argument does not create a genuine dispute.

### D. Additional Arguments

Madry made several additional arguments before the district court. She argued that the temporal proximity between her firing and her FMLA leave rendered Gibraltar's proffered reason pretextual. She also argued that Dascenza's position at the time of her termination was the same position she held prior to her leave, and that she should have been given priority over Dascenza per Gibraltar's lay-off policy. Lastly, she argued that even if Dascenza's position was distinct from her prior position, she should have been given that job over Dascenza. The district court rejected each of these arguments. Madry has not renewed any of these arguments on appeal, and has therefore waived them. *See Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 462 (6th Cir. 2003).

**AFFIRMED**.